CLAYTON v. UNIVERSAL CONSTRUCTION COMPANY.

[No. 16,905. Filed January 22, 1942.]

*Earl A. Heffner*, of Indianapolis, for appellant.

*Cooper, Royse, Gambill & Crawford,* of Terre Haute, for appellee.

BEDWELL, P. J.—The appellant, Catherine Clayton, has appealed from an award of the full Industrial Board denying her compensation as the widow of Herbert Clayton, deceased.

Herbert Clayton died on October 4, 1940, as a result of an accident that arose out of and in the course of his employment by the appellee, Universal Construction Company. At the time of his death he was living with the appellant, and on October 30, 1940, she, with Chris Clayton and Maude Clayton, the father and mother of the deceased employee, filed with the Industrial Board their application for adjustment of their claim for compensation as his dependents. The appellant claimed therein that she was his wife and that she was wholly dependent, while the father and mother claimed to be partially dependent.

At the trial of the cause before a member of the Industrial Board, the father and mother of the deceased employee dismissed their application as far as it applied to them, and the hearing member found for the appellant, and, "that she was the common law wife of the said decedent, Herbert Clayton, and was for some time prior to the 4th day of October, 1940, and on the 4th day of October, 1940, living with the said decedent as his common law wife; that said plaintiff was wholly dependent upon said decedent for her support."

The appellee filed its application to review the award rendered by the hearing member upon such finding; and on October 4, 1941, the full Industrial Board made its finding and award by which it found against the appellant and "that neither at the time of the accidental injury nor death of the said Herbert Clayton, nor at any other time, was she the wife of the said Herbert

Clayton, and that at his accidental injury and death she was neither his common law wife or his wife in any sense, and that she was not wholly dependent upon the said Herbert Clayton at the time of his said accidental injury and death for her maintenance and support." Upon such finding the full Industrial Board rendered an award that the appellant take nothing and that she pay the costs of the proceedings. From such award of the full Industrial Board she has appealed and assigned, "that the award of the full Industrial Board is contrary to law."

At the trial of the cause before the hearing member of the Industrial Board, every material fact necessary to a legal award in favor of the appellant was stipulated, except the fact of dependency, and the sole question before us for determination is whether there exists in the record some competent evidence to sustain the finding of the full Industrial Board.

In the case of *Seymour Woolen Mills* v. *Ward* (1935), 100 Ind. App. 108, 110, 192 N. E. 892, this court stated the applicable rule governing the determination of the question here presented in the following language:

"This court will not weigh the evidence in an appeal from the full Industrial Board and the facts, as found by such board, are binding upon this court and it is only where there is absolutely no evidence to sustain some necessary fact, upon which the award is based, that the award will be set aside. It is within the office of such board to determine the facts of the case from the evidence and from such facts draw reasonable inferences and 'where it draws such an inference from the facts and circumstances which in their nature are such that reasonable men might draw either the same or opposite inferences, this court cannot say that the fact found as a result of such inference is not sustained by sufficient evidence,' and, therefore, is contrary to law. *Haskell & Barker Car Company*

v. *Brown* (1918), 67 Ind. App. 178, 184, 117 N. E. 55."

In the recent case of *Schilling* v. *Parsons, Administrator, ante,* pp. 52, 58, 36 N. E. (2d) 958, 960, this court carefully considered the question of the proof that was necessary to establish a common-law marriage, and in the course of its opinion it says:

"From the language above quoted, it is quite clear to this court that a common-law marriage, to be valid, is something more than a mere contract. The contract must be acted upon by the parties, resulting in a marriage status between the man and woman so contracting. Proof of this status varies, depending on the form of the marriage agreement. If the contract is in writing, signed by the parties, or if oral and witnessed, followed by cohabitation of the parties, the marital status is sufficiently established. But where the contract between the parties is oral but not witnessed, even though followed by cohabitation, an additional factor is necessary to establish a common-law marriage. Under such circumstances there must be a holding out by the parties of their marriage status to at least such part of the public in the community in which they live as is made up of their acquaintances, neighbors and relatives."

The appellant, as a witness in her own behalf, testified that she first met the decedent, Herbert Clayton, in April of 1938, and that she went to live with him on August 15, 1938, and lived with him continuously thereafter until his death on October 4, 1940; that on the date of his death at Garrett, Indiana, they were light-housekeeping in such city; that they had arrived there on the 2nd of October, 1940, and previous to that time they had been living at the Five Point Hotel in Waukausha, Wisconsin, where they were registered as husband and wife, and where the decedent was working for appellee; that previous to this time they had maintained their home in Anderson, Indiana. She further testified

that she had been informed, following her separation from Sherman Shields in 1937, that he had obtained a divorce from her, but that in March, 1940, she learned that this was incorrect; and, in April of 1940, she filed suit for divorce from her husband, Sherman Shields, and a divorce was granted by the Superior Court of Madison County, Indiana, on the 29th day of June, 1940. Appellant further testified that immediately after the granting of the divorce on the 29th day of June, 1940, appellant and decedent agreed to continue to live as husband and wife as they had been, and at that time decedent gave appellant a wedding ring which she had worn continuously thereafter. The appellant introduced much evidence, including the evidence of the father and mother of decedent, to show that decedent had acknowledged her as his wife and to show that they were known and recognized as husband and wife by certain acquaintances and neighbors in the community where they lived.

Appellee introduced evidence by one of the joint owners of an apartment house that in April, 1940, appellant rented an apartment from her as Catherine Shields which she occupied for about a year; that once or twice Herbert Clayton had paid the rent for this apartment; that all the receipts were made out to Catherine Shields; that Sherman Shields visited this apartment between April of 1940 and October 4, 1940; that the witness had lived in that neighborhood for fourteen or fifteen years; that during the time that appellant lived there she was known as Catherine Shields, and that the appellant's neighbors called her Mrs. Shields. Another witness for appellee testified that she had known appellant since February 27, 1940; that she knew her as Catherine Shields and that she had worked with her at a restaurant from the 27th of

February until the last day of June, 1940, and that appellant was known at the place of employment as Catherine Shields. She further testified that for about two months, in August and September of 1940, she roomed at appellant's apartment, and that prior to October 4, 1940, she saw Sherman Shields at the apartment and that he occupied a room in the apartment at night with Mrs. Shields. She further testified that appellant was known in the neighborhood as Catherine Shields and that she gave the witness receipts as Catherine Shields; that from July to October 4, 1940, the appellant used an automobile that belonged to Sherman Shields.

Another witness for appellee, who was the wife of the owner of appellee corporation, testified that she wrote checks for the payroll of her husband's employees, and that she was acquainted with Herbert Clayton; that on September 17, 1940, she drew a check for $16.39 to Catherine Shields that covered wages due Herbert Clayton; that her husband had given her a slip of paper with Catherine Shields' name and address on it and had asked her to send the check for $16.39 to Mrs. Shields; that the slip of paper with Catherine Shields' name and address thereon was in Herbert Clayton's handwriting.

The fact that appellant was legally married to Sherman Shields until the granting of a divorce on June 29, 1940, was an impediment that prevented her from becoming the common-law wife of the deceased during such period. It is essential that cohabitation be in good faith, with matrimonial intent, and not intentionally meretricious, in order that such cohabitation, commenced before and continued after the removal of an impediment to marriage, such as a pre-existing marriage, shall give rise to marriage or a pre-

sumption or inference thereof; at least there must be such good faith and marital intention on the part of one of the parties to such cohabitation. This does not' mean, however, that a meretricious relationship may not after removal of an impediment to marriage take on a new character that will give rise to marriage or presumption or inference thereof. 35 Am. Jur., Marriage, § 228, p. 332, and cases there cited.

Reputation as proof of such marriage must be uniform and general and not limited to particular persons or divided, in the community in which the parties cohabit, in order to suffice, as proof of marriage · between them. *White* v. *White* (1890), 82 Cal. 427, 23 P. 276, 7 L. R. A. 799; *Klipfel's Estate* v. *Klipfel* (1907), 41 Colo. 40, 92 P. 26, 124 Am. St. Rep. 96; *Drawdy* v. *Hesters* (1908), 130 Ga. 161, 60 S. E. 451, 15 L. R. A. (N. S.) 190; *Brisbin* v. *Huntington* (1905), 128 Iowa 166, 103 N. W. 144, 5 Ann. Cas. 931; L. R. A. 1915E, Anno: pp. 39,40.

Not only was there conflicting evidence as to the reputation of appellant and decedent in the community where they lived concerning this marriage status, and concerning their holding out or acknowledgment of their marriage status, but from the evidence concerning the cohabitation of appellant with her previous husband subsequent to the divorce on June 29, 1940, and from her own evidence concerning cohabitation with the decedent during the period that her divorce action was pending, and when she, without question, knew that her relationship was meretricious, the full Industrial Board could reasonably determine that the oral unwitnessed agreement entered into by her with the decedent just subsequent to the rendition of the divorce decree was not made in good faith and with matrimonial intent.

For these reasons we cannot disturb the finding and award of the full Industrial Board, and such award is affirmed. It is so ordered.

NOTE.—Reported in 38 N. E. (2d) 887.