## HAYES *v.* JOSEPH E. SEAGRAM & COMPANY

[No. 17,148. Filed October 12, 1943. Rehearing Denied November 4, 1943. Transfer Granted January 11, 1944.]

312

*Hartell F. Denmure,* of Aurora, for appellant.

*White, Wright & Boleman* and *John E. Bachl,* all of Indianapolis, for appellee.

ROYSE, C. J.—This is an appeal from an award of the full Industrial Board denying appellant compensation for injuries alleged to have been sustained by her in the course of her employment by appellee. On the original hearing before a single member of the board there was a finding for appellant. On review of the full board a majority thereof found for appellee.

Appellant's complaint was on Form 9 of the Industrial Board, and, in substance, alleges appellant suf-

fered injuries arising out of and in the course of her employment as a whiskey inspector for appellee; that her injuries were photophobia, retinitis, ruptured blood vessels in both eyes, spot on left eye caused by looking through strong lens of inspection machine and concentration of heat and light rays within the eye; that medical and surgical treatment and hospitalization were required and not furnished by appellee who, it is alleged, did acknowledge liability.

The finding and award of the full board pertinent to a decision of the question before us is as follows:

"And now, the Full Industrial Board, by a majority of its members, finds against the plaintiff on her application filed with the Industrial Board on May 21, 1942, and finds that the plaintiff did not sustain any accidental injury while in the employment of the defendant on November 8, 1942, arising out of and in the course of her employment with the defendant.

"It is further found that whatever disability the plaintiff suffered thereafter, had no casual relation to her employment with the defendant.

"It is further found that the plaintiff did not suffer any accidental injury while in the employment of the defendant on November 8, 1940 or at any other time.

### AWARD

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED, By the Industrial Board of Indiana, that the plaintiff Ruth M. Hayes, take nothing by her complaint against the defendant, Joseph E. Seagram and Company, filed with the Industrial Board of Indiana on May 21, 1942, and that the plaintiff pay the costs of this proceeding."

The assignment of error here is that the award of the full board is contrary to law.

Appellant first contends the injury sustained by her

was accidental within the meaning of the Workmen's Compensation Act; that she sustained an injury because she was required to peer through a strong magnifying lens, at an intense light and glare, which caused the intermittent beams of light to strike the eye and retina of the eye. This requires a consideration of the evidence upon which the Industrial Board based its award. This court will not weigh the evidence and will not disturb the finding of the Industrial Board where there is any substantial evidence to sustain it. *Prest-O-Lite Co., Inc.,* v. *Stone* (1935), 100 Ind. App. 480, 196 N. E. 352; *V. E. Sprouse Company* v. *Rice* (1936), 102 Ind. App. 612, 4 N. E. (2d) 57; *Clayton* v. *Universal Construction Co.* (1942), 110 Ind. App. 322, 38 N. E. (2d) 887.

By substantial evidence we mean such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion. *Consolidated Edison Company* v. *National Labor Relations Board* (1938), 305 U. S. 197, 229, 230, 59 S. Ct. 206, 83 L. Ed. 126, 140. Where there is a conflict in the evidence this court will consider only that substantial evidence most favorable to the finding of the Industrial Board. *Finkley* v. *Saenger Tailoring Shop* (1935), 100 Ind. App. 549, 196 N. E. 536; *Morgan* v. *United Taxi Co., Inc.* (1938), 105 Ind. App. 340, 14 N. E. (2d) 736.

With these rules in mind we proceed to a consideration of the evidence upon which the board based its award.

The inspection machine on which appellant worked as inspector is a metal box with a frosted window on one side in which box is an ordinary 100 watt electric bulb surrounded by a frosted globe or shield. Approximately seven inches out from the frosted window of the box is a glass magnifying lens approximately thir-

teen and one-half inches in diameter and between this lens and the box is a conveyor on which unlabeled bottles of whiskey pass between the lens and the box, the lens serving the purpose of magnifying the bottle about two diameters. The inspector sits on a chair approximately eighteen inches to two feet away from the lens. Appellant testified that shortly after she started working on this machine she had severe pains in her head and her nose bled. The employer's nurse put cold packs to her head. This was on November 8, 1940. The next day she returned to the same work and again had a nose bleed and pains in her head. The nurse would not permit her to return to work on the machine. She consulted her family physician who ordered her not to work on the machine and to consult an eye specialist. At about this time she was off work for about ten days. She was treated by the eye specialist from November 30, 1940, until the time of the hearing. She returned to work after the ten-day lay-off and continued working for appellee until about September 1, 1941, at which time she took a leave of absence until November 15th. She then returned to work and was continuously in the employ of appellee up to and at the time of the hearing before the Industrial Board. In August of 1941 and on one or two occasions thereafter she complained of having blind spells. The specialist who treated her said she was suffering from retinitis and that she complained of a spot in her left eye. This spot was not visible but in taking the field of vision there was a spot called a small central scotoma. He said retinitis could be caused by the light if there were ultra violet rays in the light or from an intense heat condensed by the light. On cross-examination he said that if the machine did not concentrate sufficient heat to irritate or affect the outer eye, and if the light contained no ultra

violet rays, then he hardly believed he could connect her trouble with her employment. There was expert testimony to the effect that an examination of this inspection machine disclosed no trace of ultra violet rays and that no heat noticeable to the hand or face was found.

An eye specialist who examined appellant testified in part as follows: "I found no evidence of any injury to either the left or the right eye on the occasion of either of my examinations and I found no evidence of any disease of either the right or left eye. In her (the appellant's) case, I found no evidence of any pathology of the retina of either of her eyes. If there were an inflammation of the retina there would not have been a normal appearance of the eye grounds. The eye grounds were normal in both eyes. She gave me a history of having a nose bleeding from both sides of the nose and bleeding in the nasal side of the left eye. The bleeding from both sides of the nose could not come from any strain of the eyes. Eye strain does not produce bleeding from the nose. Bleeding from the nose would have to come from circulation in the nose, particularly from the circulation in the mucous membranes."

We are of the opinion that this evidence was sufficient to sustain the board's finding; that appellant did not sustain an accidental injury while in the employment of appellee, and that whatever disability she may have had had no casual connection with such employment.

Appellant next complains that the Industrial Board erred in refusing to permit two fellow employees to testify as to the effect this machine had on them. Appellee says that since there was no offer to prove what

these witnesses would or would not have testified, no question is presented.

The Industrial Board being an administrative body is not bound by the strict rules of evidence. *General, etc. Tank Car Corp.* v. *Weirick* (1921), 77 Ind. App. 242, 133 N. E. 391. While in such instances it is the better practice to make an offer to prove, we do not feel that a failure to do so precludes us from considering whether or not harm has been done by the refusal to admit evidence. We believe the board erred in refusing to admit this testimony. However, we do not believe this constitutes reversible error, because the board on sufficient evidence found that appellant did not suffer an accidental injury in the course of her employment. Therefore, the effect this machine had on other employees would not be material to the question here involved. For the same reason the error of the board in refusing to permit one of appellee's expert witnesses to answer on cross-examination a hypothetical question regarding the effect of this machine on other employees was harmless.

There is no merit to appellant's contention that because appellee paid appellant's doctor bills it thereby admitted and became liable for a permanent impairment of any kind or character which may be later asserted.

Finding no error the award of the Industrial Board is affirmed.

NOTE—Reported in 50 N. E. (2d) 885.