IN RE ADOPTION OF ANONYMOUS I. ———. J. ——— v.
K. ———. L. ———.

[Filed October 25, 1973.]

WHITE, J.—The trial court denied the petition of appellants, a natural father and his second wife, for the adoption of three minor children. The appellee, the natural mother who resisted the adoption, is the father's first wife. We affirm the denial.

The adoption petition alleged that the consent of the mother was not required because (1) she had abandoned or deserted the children for a period of more than six months immediately prior to the filing of the petition and (2) because she failed to communicate with them for more than one year when able to do so. Either of those reasons, if proved, would be sufficient to render the mother's consent unnecessary.[1] The

---

1. The pertinent portion of the statute in force when the petition was filed, Ind. Acts 1941, Ch. 146, § 6, as then last amended by Ind. Acts 1969, Ch. 355, § 1, Ind. Ann. Stat. § 3-120 (Burns 1969 Supp.) read as follows:

"Consent to adoption is not required of: (1) a parent or parents if the child is adjudged to have been abandoned or deserted for six [6]

mother's answer denied that she had abandoned or deserted the children or had failed to communicate with them as alleged in the petition.

After hearing the evidence, taking the case under advisement, and receiving briefs from the parties, the court found for the mother on her answer and against the father and his wife on their petition; "that the natural mother of said children has not abandoned nor deserted said children for six (6) months or more immediately preceding the date of filing the Petition, and that the natural mother, for a period of at least one (1) year prior to filing of the Petition, has not failed to communicate with the children when able to do so; and that the adoption prayed for in said Petition should be denied." On those findings judgment was rendered denying the petition at petitioner's costs.

The father and mother were divorced over four years before the adoption petition was filed. The decree of divorce, reciting that it was "by agreement of the parties, until further order of the court", awarded custody of the children to the father with right of visitation to the mother for certain periods every other weekend. The mother exercised her rights on three or more occasions, but on two or more occasions an argument arose between the father and mother. The father thereafter refused to permit the mother to take the children. On one occasion the children's paternal grandfather, with whom the father and children were then living, told the mother he would kill her if she did not leave his premises. He went into the house and came back onto the porch with a shotgun or rifle.

months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one [1] year, he fails to communicate with the child when able to do so, or he wilfully fails to provide for the care and support of the child, when able to do so, as required by law or judicial decree; . . ."

The statute was again amended in 1971 and is now Ind. Ann. Stat. 31-3-1-6 (Burns Code Ed., 1973).

The mother thereafter filed (in the divorce case) a petition for contempt citation against the father, but failed to appear for the hearing because she thought an agreement for visitation had been made by her attorney and her husband's counsel. When she was thereafter refused visitation she attempted further court action, but had no money for attorneys' fees and did nothing.

Both the father and mother subsequently married other spouses and for nearly four years prior to the adoption hearing the children have lived happily with their father and his second wife. The welfare department made an investigation and reported favorably on the proposed adoption.

There was no visitation or direct communication between the mother and her children during that four-year period. As to whether she made any effort to do so, the evidence is conflicting. It is also in conflict as to her contention that she communicated with them indirectly through her grandparents (the children's great-grandparents). The evidence most favorable to the trial court's decision is the mother's testimony on which we base most of our statement of the facts.

She kept in touch with her children through her grandparents who were friendly with the father and visited the children often. Several times she attempted to telephone to the father or the children but always the stepmother answered and she would hang up. In 1968 she drove by the house every two or three weeks to see the children but never did. Her husband tried several times to call the father about visitation and on two times was told by the father that there was no way she was going to see the children. When she bought clothes for the children shortly after the divorce the father wouldn't let the children have them and threatened to burn or throw away any gifts, cards or letters or anything she sent to the children.

On July 20, 1971, her grandparents took the mother and her husband with them to a little league baseball game in which

one of the children was playing. The mother there observed the children but did not communicate, or attempt to communicate, with them. She said she was afraid of creating a scene and did not want to involve her grandparents. She and her husband sat in the grandparents' car at all times. After the ball game the father telephoned the grandmother and told her that if they were going to continue to bring the mother he would not inform them of the children's activities in the future. During the intervening years, on several occasions the grandparents had talked to the father about letting the mother see the children and were told that she had lost her visitation rights. After the father's telephone call the grandfather agreed to pay attorneys' fees and the mother filed a petition in the divorce action to fix visitation rights. One week later the father and his wife filed this adoption action.

This is not a custody case but is an adversary adoption proceeding. In such proceedings the child's best interest is never an issue until the resisting natural parent's relinquishment of parental claims "has been first established by clear, cogent and indubitable evidence." *In re Adoption of Bryant* (1963), 134 Ind. App. 480, 494, 189 N.E.2d 593, 600, 1 Ind. Dec. 298, 305. In *Bryant* the petitioners to adopt contended that an implied relinquishment of parental claims by operation of law had been established by proof of either abandonment and desertion or failure to support. In reversing a decree of adoption based on findings that those ultimate facts were established, Judge Hunter said:

> "Relative to the issue of abandonment and desertion in the instant case *it should be noted* that the only period of time upon which the decree of the trial court could operate (6 months immediately preceding the filing of adoption petition, Burns' § 3-120, *supra*) *was during the period that the mother of said child was alive and during all of which time the child was not bereft of home and parental care, quite the contrary, it had both, a good home and the maternal care of its mother.* In the case before us the child's parents were divorced four (4) months and thirteen (13)

days after their marriage and before the mother realized she was pregnant. Upon the birth of the child, the father acknowledged it, gave it his name, and agreed with the mother that she should have custody of their child. . . . In order to sustain the trial court's finding of abandonment and desertion on the facts in this case we would perforce be required to hold as a matter of law that the mere acquiescence of the father in the mother's custody of their infant child would constitute a relinquishment of his parental rights and claims to their child prior to the death of its mother." (Emphasis in original.) 134 Ind. App. 489-90.

The facts in *Bryant* and the facts at bar differ in many respects, but the two cases have in common the fact that the children involved had a good home and parental care at all times during which abandonment and desertion by the resisting parent was alleged to have existed. And here, as in *Bryant,* in order to find an abandonment and desertion it would be necessary to hold that acquiescence by one parent in custody by the other parent constitutes, as a matter of law, relinquishment of parental rights and claims. Except for the alleged failure to communicate, there is nothing on which to base a finding of abandonment and desertion but the mother's agreement to the custody order. Since failure to communicate with *"a child in the custody of another person"* is a separate ground for dispensing with consent, it does not appear that it can be the sole element, or one of the elements, of abandonment, especially when the person having legal custody is providing a good home and parental care.

To prove their alternative ground for dispensing with the mother's consent, i.e., the mother's failure to communicate with the children, the appellants not only had the burden of proving a lack of communication but also the burden of proving that the mother was *able* to communicate. In their testimony appellants have not denied that they made some attempts to block communication, especially in 1967. There is no testimony that they invited or encouraged communica-

tion, yet they seek to avoid the consequence of having succeeded in thwarting it by making the argument that what happened in 1967 does not justify what they call the mother's failure "to make a genuine and serious attempt to communicate with the children for four years".

If it be granted *arguendo* that the evidence is sufficient to sustain an inference that the mother could have succeeded in communicating with the children over the appellants' objection had she tried harder, that is certainly not the only inference reasonably to be drawn from the evidence. The inference that no effort the mother was capable of making would have prevailed is equally logical. The trial court not only heard the testimony of the parties and their witnesses but he observed them and their demeanor. He was in a position to evaluate the relative abilities of the parties to assert their rights and achieve their objective in difficult situations. His finding that the mother "has not failed to communicate with the children when able to do so", implies that if and when she failed to communicate it was because *she* was unable to do so. We cannot say that the evidence is insufficient to sustain that implied finding.

In their argument appellants have clearly recognized their burden. Their summary of argument, stripped of redundance and embellishment reads:

> "The judgment is contrary to law and contrary to the evidence most favorable to Appellee because the evidence can lead only to the conclusion that the natural mother failed for a period of four years to communicate with the children sought to be adopted, when she was able to do so and . . . only to the conclusion that the natural mother abandoned the children for a period of four years."

*A. S. C. Corp.* v. *First National Bank of Elwood* (1960), 241 Ind. 19, 167 N.E.2d 460, and *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N.E.2d 669, 673, are cited by appellants in support of their contentions. In *A. S. C. Corp.*, the court said:

"The decision of the trial court comes to us clothed with the presumption that a correct result was reached and the burden is upon appellant here to overcome that presumption. *Souerdike* v. *State* (1952), 231 Ind. 204, 206, 108 N.E.2d 136.

"Appellant had the burden of proof to establish the material allegations of its complaint by a preponderance of the evidence. If the evidence here entitled appellant to the relief denied it, the decision of the trial court was contrary to law. In determining that question, however, 'we may consider only the evidence most favorable to the successful party, and it is only where the evidence is without conflict and leads to but one reasonable conclusion, and the trial court has reached a contrary conclusion, that the decision will be disturbed as being contrary to law. *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N.E.2d 905; *Rowe* v. *Johnson* (1945), 223 Ind. 289, 60 N.E.2d 529; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669, and cases cited.' *Souerdike* v. *State, supra* (1952), 231 Ind. 204, 206, 108 N.E.2d 136.

"See also: *E. H. Purcell & Co., Inc.* v. *Agricide Corp.* (1956), 126 Ind. App. 476, 134 N.E.2d 233; *Newton* v. *Cecil* (1955), 125 Ind. App. 416, 421, 124 N.E.2d 713." (241 Ind. at 23.)

The court also quoted *Haynes* v. *Brown* (1950), 120 Ind. App. 184, 190, 88 N.E.2d 795, 798, as follows:

" 'Nor does a lack of contradiction or dispute in the evidence of itself make us the finders of the facts or justify us in substituting our judgment for that of the trial court. We can only do that when the evidence is all one way, and but one conclusion could be reached from the facts proved, *Wiggam* v. *Rhodes' Estate* (1931), 92 Ind. App. 491, 176 N.E. 250; *Wilson, Admx.* v. *Rollings, supra; Pearson Co., Inc.* v. *Cohen et al., supra;* for uncontradicted evidence will sometimes support conflicting inferences, and when that is the case, the inferences drawn by the trier of the facts will prevail. *Gish* v. *St. Joseph Loan, etc., Co.* (1918), 66 Ind. App. 500, 113 N.E. 394; *Wiggam* v. *Rhodes' Estate, supra; Williams* v. *Bent* (1949), 119 Ind. App. 374, 87 N.E.2d 883; see also *Clayton* v. *Universal Construction Co.* (1942), 110 Ind. App. 322, 38 N.E.2d 887, and *Cole* v. *Sheehan Construction Company* (1944), 222 Ind. 274, 53 N.E.2d 172.' " (241 Ind. at 26.)

While the evidence in this case is, in large part, uncontradicted, it is not "all one way". Even that which is not in dispute is, in some respects, supportive of alternative inferences. We must assume that the trial court drew the inferences most favorable to his negative findings of ultimate fact and those findings must prevail.

Appellants having failed to overcome the presumption that the correct result was reached below, the judgment is affirmed.

Buchanan, P.J. and Sullivan, J., concur.

\* \* \*

NOTE BY THE COURT: Persons involved in adoption proceedings, particularly innocent children, are protected at the trial level, from embarrassing and prejudicially harmful publicity by section 5 of the Adoption Act, Ind. Ann. Stat. 31-3-1-5 (Burns Code Ed. 1973). To the extent possible the same confidentiality should be maintained at the appellate level. We therefore direct that the clerk of this court withhold from public examination the record (transcript), briefs, and other papers in this case. Copies of this opinion should be mailed to court and counsel in the usual manner but all copies made available to the press and public should bear fictitious names for the parties, such as *In re adoption of Anonymous*, I. ——— J. ———, appellant, v. K. ——— L. ———, appellee, and should carry no number. The official reporter of this court, all unofficial reporters, all news media representatives, counsel, and the parties are requested to co-operate in preserving the anonymity of the children by not using the true names of the parties in any report of this case, written or oral.

NOTE.—Reported at 302 N.E.2d 507.