**In the Matter of the ADOPTION of Chris Delayne THOMAS, Jr., and Carl David Thomas.**

**Chris D. Thomas, Respondent-Appellant, Thomas H. Lee, Petitioner-Appellee.**

**No. 4–681A37.**

Court of Appeals of Indiana, Fourth District.

Feb. 16, 1982.

Rehearing Denied March 17, 1982.

David S. McCrea, McCrea & McCrea, Bloomington, for respondent-appellant.

Richard S. Harrison, Cotner, Mann & Chapman, Bloomington, for petitioner-appellee.

CONOVER, Judge.

Appellant Chris Delayne Thomas (Chris), natural father of Chris Delayne Thomas, Jr. and Carl David Thomas (the boys) appeals a judgment of the Monroe Circuit Court granting the petition of Thomas H. Lee (Lee) to adopt the boys. They are the

natural children of Chris and Lee's present wife Charlotte Ann Lee (Charlotte). She gave her consent to the boys' adoption by Lee, but Chris did not.

We reverse.

ISSUES:

Chris' motion to correct errors preserved the following issues for review on appeal:

1. Did the trial court err in considering the welfare caseworker's report after the parties had stipulated it into evidence at the adoption hearing?

■ 2. Did the trial court err in failing to make findings of fact *sua sponte* to support its decision?

3. Did the trial court err in granting rights of visitation to the natural paternal grandparents?[1]

4. Is the decision supported by sufficient evidence?

■ Because this court prefers to decide an appeal on its merits, cf. *Cunningham v. Hiles*, (1979) Ind.App., 395 N.E.2d 851, and *West v. Indiana Ins. Co.*, (1969) 253 Ind. 1, 247 N.E.2d 90, we hold Chris' motion to correct errors preserved the insufficiency issue, but deplore the quality of draftsmanship contained therein.[2]

FACTS:

Chris and Charlotte married in 1970 and were divorced in 1978 by a Louisiana Court.

During their marriage, they had two children, both boys. The divorce decree granted custody of the boys to Charlotte, but contained no provision requiring Chris to support them, nor did it grant him any specific rights of visitation.

Lee and Charlotte married in 1978 after the divorce. They moved with the boys to Bloomington, Indiana, that year and have resided there ever since. Chris alternately lived in Louisiana and Colorado after the divorce.

With Charlotte's written consent, Lee filed a petition to adopt the boys in the Monroe Circuit Court on May 8, 1980. The petition alleged under Ind.Code 31–3–1–6(g)[3] that Chris' consent was not required. The welfare caseworker assigned to this adoption filed her report with the court. It contained the statement "[t]here does not appear to be any reason that this adoption should not take place." It further stated Chris had not paid child support for the preceding six months.

The Petition was heard by the Court on July 14, 1980, with petitioner and respondent present and participating. The parties stipulated the welfare report into evidence at the hearing, but Chris "disputed" the statements therein regarding lack of reasons to prevent adoption and Chris' failure to pay support for the preceding six months.[4]

---

1. This issue was not argued in appellant's brief. Therefore, it is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7), *Kranda v. Houser-Norborg Medical Corp.*, (1981) Ind.App., 419 N.E.2d 1024; *Bailey v. Truck Driver's Local 414, etc.*, (1981) Ind.App., 419 N.E.2d 769; *Tipton Co. Abstract Co., Inc. v. Heritage Fed. S. & L. Ass'n.*, (1981) Ind.App., 416 N.E.2d 850; *Whitaker v. St. Joseph's Hospital*, (1981) Ind. App., 415 N.E.2d 737.

2. The contents of Chris' motion in light of the specificity requirements of T.R. 59(D)(2) are discussed later in this opinion.

3. IC 31–3–1–6(g) provides:
 "Consent to adoption is not required of: (1) A parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a

period of at least one year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents); ...."

4. For reasons that are unclear from the record, Chris filed a pleading entitled "Supplemental Motion to Correct Errors" on March 10, 1981, supported by his affidavit to which were attached alleged money order receipts purportedly showing payment of support by him to Charlotte. This pleading with its exhibits is ineffectual for any purpose. It was filed nine days too late. The trial court's judgment was entered on December 31, 1980, cf. T.R. 59(C).

Chris testified he talked to the boys twice by telephone in 1979 and once in 1980. He tried many other times, but Charlotte thwarted these efforts on each occasion. Charlotte disputed this statement, testifying Chris had attempted to communicate with the boys no more than 4 times in the interim between their October, 1978 divorce and the July, 1980 adoption hearing. Charlotte also disputed Chris' testimony that he sent greeting cards, money and other gifts to the boys on holidays and birthdays.

Chris testified without dispute that he voluntarily began paying child support of $150 per month to Charlotte in May, 1978, some 6 months before their divorce that October, and has continued to make regular monthly payments to her in that amount since that time, excepting one interruption of two month's duration. Chris sent Charlotte payments to cover this "arrearage" which she had received but had not cashed up to the time of the adoption hearing.[5] It is also undisputed that different members of Chris' family had visited the boys several times at their home in Bloomington. These visitors included Chris' mother who visited them in April, 1979, and March, 1980.

DECISION:

Because we reverse due to insufficiency of the evidence to support the trial court's decision, we do not discuss the other issues appellant raises in this appeal.

*The Motion to Correct Errors*

Before reaching the sufficiency issue, however, we deem it necessary to discuss the content of appellant's motion to correct errors. On the abandonment issue, it merely said:

"Respondent moves the Court, pursuant to Trial Rule 59(A)(1), (4), (6) and (8) to set aside its Order of Adoption, . . ., and to grant a new hearing on the grounds that: . . .

"(3) Indiana Code 31–3–1–6 requires, for a valid adoption, either the consent of the living natural parents or a finding by the court that the living natural parents have abandoned the children sought to be adopted.

"(4) respondent never gave his consent . . ., so the basis of the Court's Order of Adoption must necessarily have been a finding by the Court of abandonment by respondent, . . . . Inexplicably, such a finding was not expressly stated by the Court. . . .

"(6) respondent demonstrated his concern for his natural children and his desire to maintain a parental relationship with them at his appearance at the Petition to Adopt hearing. Respondent's continuing concern and support for his natural children absolutely refutes any finding of abandonment made by the Court . . ."
(Emphasis added.)

The motion contains no other argument or discussion on that issue. Appellant merely attached a machine copy of *Adoption of Bryant,* (1963) 134 Ind.App. 480, 189 N.E.2d 593 to support his assertion that it was error for the trial court to grant the paternal grandparents rights of visitation.

Even had it been timely filed, the motion is bad for lack of specificity and is subject to the same criticism as Chris' original Motion to Correct Errors.

5. At first blush, a conflict in the evidence on this point seems to appear between this testimony and the welfare report's statement that Chris had not paid child support for the preceding 6 months. Although such reports must be filed in all adoption proceedings, they may not be considered by the trial court in arriving at its decision where the proceedings are contested. *Adoption of Dove,* (1977) Ind.App., 368 N.E.2d 6; *Adoption of Sigman v. Dohner,* (1974) 159 Ind.App. 618, 308 N.E.2d 716;

*Adoption of Jeralds,* (1972) 152 Ind.App. 538, 284 N.E.2d 99; *Attkisson v. Usrey,* (1946) 224 Ind. 155, 65 N.E.2d 489.

It is presumed in a cause tried to the Court that the trial judge considered only properly admissible evidence in arriving at his decision, and disregarded any improper evidence. *Adoption of Dove, supra,* at page 9 of 368 N.E.2d; *Adoption of Thornton,* (1976) Ind.App., 358 N.E.2d 157.

Since nothing appears to the contrary, we indulge the presumption. The welfare report was not considered below, even though trial counsel stipulated it into evidence. Thus, there is no conflict on the point.

Chris' inattention to T.R. 59(D)(2) requirements was almost fatal as to the sufficiency issue he sought to raise.

Our rules of procedure set the minimum standard to be met by the pleader who prepares a motion to correct errors to properly preserve the issues he seeks to raise for trial and appellate purposes. T.R. 59(D) provides:

> "(2) Content of Motion. In all cases in which a motion to correct error is made, such motion shall *separately state the error or errors which are claimed.* The error claimed is not required to be stated under, or in the language of the bases for the motion allowed by this rule, by statute, or by other law. *Each claimed error shall be stated in specific rather than general terms,* and shall be accompanied by a statement of the *facts and grounds* upon which the errors are based." (Emphasis supplied.)

Ind.Rules of Procedure, T.R. 59(D)(2).

■■■ The motion to correct errors is a critically important pleading, both to the trial court and this one. Properly and clearly drafted, it affords the trial court an opportunity to correct any errors it may have committed, thus avoiding an appeal. For appellate purposes, it is the "complaint on appeal."[6] Our Supreme Court speaking through Hunter, J., succinctly stated the purposes of such a motion in the following language:

> "The motion to correct error serves three purposes: (1) to present to the trial court an opportunity to correct error which occurs prior to the filing of the motion; (2) to develop those points which will be raised on appeal by counsel; and (3) to inform the opposing party concerning the points which will be raised on

appeal so as to provide that party an opportunity to respond in the trial court and on appeal."

*P–M Gas & Wash Co., Inc. v. Smith,* (1978) Ind., 375 N.E.2d 592 at 594. Errors may not be hidden in generalities in the motion to correct errors to be raised later specifically on appeal. *Young v. Duckworth,* (1979) Ind., 394 N.E.2d 123; *Guardiola v. State,* (1978) Ind., 375 N.E.2d 1105. Bald assertions of error, couched in general rather than specific terms do not constitute substantial compliance with the rules of procedure. *Anderson v. Ind. State Employees Appeals Comm.,* (1977) Ind.App., 360 N.E.2d 1040. In *Johnson v. State,* (1975) Ind.App., 338 N.E.2d 680 at 682, we said:

> "The requirement of specificity contained in T.R. 59(B) and echoed by T.R. 59(G)[7] should be notorious by now. Not only must the alleged error be specifically set out, but also the facts and grounds in support of the claimed error must be discussed with enough particularity that the trial court may be made aware of the exact legal issue involved. Failure to comply waives any claimed error except sufficiency of the evidence, pursuant to T.R. 50(A)(5)."[8]

The reasons for formulation of T.R. 59(D)(2) and its predecessors by our Supreme Court should be obvious. Neither the trial court nor the courts on appeal should be put to the task of following a meager trail of clues through a rhetorical jungle to determine what counsel had on his mind by way of issues. The sheer volume of litigation presently confronting the courts prohibits such endeavors, if we are to stay abreast of this floodtide. Errors sought to be preserved should stand out with crystal clarity in the motion to correct errors. This enables the Court, trial or

---

6. For an informative discussion of this subject, see 4 W. Harvey and R. Townsend, Indiana Practice (1971) Rule 59, pp. 127–130, and supplements.

 On this subject and the practical aspects of appeals generally, see Indiana Continuing Legal Education Forum, Institute on Appellate Procedure Handbook (1979) to which Staton, J., and Blue, Comm'r., of this Court made significant contributions.

7. T.R. 59 was amended January 1, 1980, and January 1, 1981. The substance of the old sections (B) and (G) regarding specificity are now set forth in 59(D)(2).

8. T.R. 50(A)(5) provides that insufficiency of the evidence may be raised for the first time on appeal in criminal but *not* in civil cases.

appellate, to reach the merits without undue expenditure of effort in essentially unproductive areas.

 Although T.R. 59(D)(2) does not mandate statements of the alleged errors to be couched in the language of the rule, etc., *neither does it prohibit* counsel from so stating them, followed by language fulfilling the remaining requirements. The penalty for non-specificity can be affirmance of the trial court's decision without consideration of the merits on appeal. Such action is forestalled by careful preparation of the motion to correct errors in light of T.R. 59(D)(2).

### Sufficiency of the Evidence

As we review the sufficiency of the evidence, we are mindful of the standard of review set forth in the trial rules:

"[T]he Court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

Ind.Rules of Procedure, T.R. 52(A)(3).

In *Horlock v. Oglesby*, Jackson, C. J. said:

"It is not the province of appellate courts to weigh evidence. We will consider only the evidence most favorable to the appellee together with any reasonable inferences which may be drawn therefrom to determine whether the decision is sustained by sufficient evidence *within the standard of proof required by law.*" (Emphasis supplied.)

*Horlock v. Oglesby*, (1967) 249 Ind. 251, 231 N.E.2d 810, 815; *A.S.C. Corp. v. First National Bank of Elwood*, (1960) 241 Ind. 19, 167 N.E.2d 460; *Booth v. Town of Newburgh*, (1958) 237 Ind. 661, 147 N.E.2d 538; *Emmons v. Dinelli*, (1956) 235 Ind. 249, 133 N.E.2d 56.

To avoid a forest of quotation marks, we summarize Indiana law in the area of natural parental rights and their termination.

 A natural parent has a "legal title" or "proprietary claim" to his child's filial affection, obligation and custody. Such rights are based upon natural, Roman, Common and statutory law; however, they are not absolute. Such rights are in the nature of a trust imposed upon the parent and are based upon the parent's acceptance of certain correlative duties and obligations, namely to maintain, care for, protect, support, educate, give moral and spiritual guidance to, and provide a home and the love and security which a home gives to the child.

 These rights may be relinquished either by consent of the natural parent or by operation of law where he neglects to perform his correlative duties and obligations toward the child. The parent's careless and negligent failure to perform his parental duties is a significant element of the offense of abandonment or desertion. Such neglect is to be considered regardless of any actual intention or settled purpose by the parent to relinquish his proprietary claim to his child. Relinquishment by consent is the voluntary act of the parent, relinquishment by abandonment is by operation of law. Abandonment imports any conduct on the part of the parent which evinces an intent or settled purpose to forego all parental duties and relinquish all parental claims to the child. In abandonment cases, it is only necessary that the intention or settled purpose of the parent exist as to non-performance of his required parental duties and obligations.

 The determination of the ultimate fact of abandonment and desertion should receive a liberal construction to the end that unfortunate children who have been bereft of home and parental care may be afforded the benefits of an adoptive home and parental care. The adoption statute is not to be so strictly construed as to defeat its purposes. On the other hand, the relationship between parent and child is a bundle of human rights of such fundamental importance, adoption statutes being in derogation of the common law should be strictly construed in favor of a *worthy parent* and the preservation of such relationship. Thus the liberal construction rule must be tempered by a counterbalancing rule, that is, neither should the adoption statute be so

liberally construed that it would destroy the safeguards erected for preservation of family relationships.

Of the many ties that bind humanity, that which unites the parent and the child is the earliest and most hallowed, and in all civilized countries it is regarded as sacred.

■ Adversary proceedings for the adoption of a child must be carefully distinguished from those involving a question of the child's custody. The former involves more serious consequences and are of real import. Custody may be awarded for a temporary duration but a decree of adoption severs forever every part of the parent and child relationship; severs the child entirely from its own family tree and engrafts it upon that of another. For all legal and practical purposes a child is the same as dead to its parents. The parent has lost the right ever to see the child again or to have any real knowledge of its whereabouts.

The reasons must be strong and cogent to justify a court in withholding from the natural father the right conferred by the positive law of the land which is consonant with the law of nature and the dictates of common humanity.

■ Mere acquiescence in a worthy mother's custody of their children[9] by the natural father is neither evincement of the father's settled purpose or intention to forego parental duties and obligations, nor a careless and negligent failure to perform them. Such acquiescence cannot be construed as an implied relinquishment of his claim to his children.

■ Courts have not hesitated to build a strong fortress around the rights of natural parents to their children. For this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established "by clear, cogent and indubitable evidence," *Graham v. Starr*, infra.

The "child's best interest" rule is never an issue for judicial determination in an adversary adoption proceeding until petitioner has established abandonment or desertion by clear, cogent and indubitable evidence. To hold otherwise would be to lend approval to and provide media for, the advancement of governmental paternalism by judicial precedent.

It is no doubt true that a child in the custody of its worthy mother and her new mate forms a strong attachment to them as they undoubtedly have for such child. It may further be true that the new couple is better circumstanced than the natural father to bestow proper care by way of temporal benefits upon the child. However, even though these considerations may present a hardship by way of emotional disturbance, they obviously cannot enter into and govern the determination of the question of law applicable to the issues in an adversary adoption proceeding.

This summary is primarily based upon the opinion of then Acting P. J. now Justice Hunter in *Adoption of Bryant*, (1963) 135 Ind.App. 480, 189 N.E.2d 593, and the opinion of Justice Achor in *Emmons v. Dinelli*, (1956) 235 Ind. 249, 133 N.E.2d 56. See those cases for other citations.

■ The case at hand involves an adoption proceeding where the natural father has not given his consent to adoption. In such case, petitioner is required to prove the material allegations of his petition by "clear, cogent and indubitable evidence." *Graham v. Starr*, (1981) Ind.App., 415 N.E.2d 772, 774; *Adoption of Bryant*, (1963) 134 Ind.App. 480, 189 N.E.2d 593, 600; *Adoption of Lockmondy*, (1976) Ind.App., 343 N.E.2d 793.

**9.** The U.S. Supreme Court has held the presumption that a natural mother is better suited to have the custody of young children violates the equal protection clause of the 14th amendment. *Stanley v. Illinois*, (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551; *State of New York, ex rel. v. Watts*, (1973) 350 N.Y.S.2d 285, 70 A.L.R.3d 300, 301. Ind.Code 31–1–11.5–21. Differential treatment based on sex is "suspect." *Frontiero v. Richardson*, (1973) 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583.

Indubitable means "not open to question or doubt: too evident to be doubted: UNQUESTIONABLE," *Webster's Third New International Dictionary, Unabridged,* (1976). Petitioner Lee carried a heavy burden of proof with him into the trial court.

■ Even when we resolve all evidential disputes in favor of petitioner Lee, grant him all reasonable inferences and clothe the decision with the rebuttable presumption that it is correct, the presumption immediately falls. The decision is clearly erroneous. The evidence and inferences as thus resolved do not satisfy the formidable standard of proof required of petitioner in this kind of proceeding. On the contrary, it leads to a conclusion directly opposite that reached by the trial court.

We state the ultimate facts in ascending order of importance:

1. Chris, the natural father of the boys, did not consent to their adoption by Lee, the petitioner.

2. Chris had no legal rights of visitation with the boys.

3. Chris voluntarily and continuously paid substantial monthly support for the boys beginning 6 months before the Louisiana divorce decree and continuing for 26 months to the date of the adoption hearing. During this period he was *not* required to do so by law or judicial decree.

4. While a resident of Louisiana and Colorado, he attempted to contact the boys by telephone 4 times between October, 1978, the time of the divorce, and the adoption hearing date.

5. Different members of Chris' family visited the boys in their Bloomington, Indiana, home during that period, including Chris' mother in April, 1979, and March, 1980. Significantly, she came from her home in Louisiana to do so on each occasion.

6. There is a total absence of evidence that petitioner Lee and Charlotte invited or encouraged Chris' communication with the boys.

■ No question of physical abandonment for 6 months prior to petition filing date is here at issue. Charlotte had legal custody of the boys and was providing them with a good home and parental care. Physical abandonment is not a ground upon which a trial court may grant a contested adoption where the child is in the custody of another person under our statute as currently promulgated. *Adoption of Anonymous,* (1973) 158 Ind.App. 238, 302 N.E.2d 507, 509–10; *Adoption of Bryant, supra,* 189 N.E.2d at 599.

■ Further, Chris' mere acquiescence in Charlotte's custody of the boys did not constitute a relinquishment of his natural parental rights and claims to the boys. *Adoption of Bryant, supra* at 598.

Lastly, no question of failure to support is here presented because the Louisiana divorce decree did not impose that obligation upon him. That he did so *consistently and voluntarily* bears upon the sole remaining statutory ground, failure to significantly communicate or make only token efforts to do so, i.e. psychological abandonment as we discuss in more detail later.

To put that ground in context, we quote the applicable portions of the statute in sequence:

"(g) Consent to adoption is not required of:

... a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so ... (when the parent or parents have made only token efforts to communicate with the child, the court may declare the child abandoned by the parent or parents); ...."

IC 31–3–1–6(g).[10]

Does the evidence unquestionably demonstrate psychological abandonment due to

---

**10.** Three degrees of communication or lack thereof, are contemplated by the statute, (a) no communication, (b) insignificant communica-

tion or only token efforts to communicate (the same thing), and (c) significant communication. It is only when petitioner demonstrates by

insignificant communication by Chris for a period of one year? Clearly it does not.

By Charlotte's admission, Chris attempted to communicate with the boys 4 times in the interval between their divorce and the adoption hearing. He was a resident of Louisiana and Colorado during this period. The Louisiana divorce decree granted exclusive custody of the boys to Charlotte and stripped Chris of any legal rights of visitation with them. Such attempts clearly indicate he did not intend to psychologically abandon the boys. He was a non-resident, non-custodial parent who had not been invited to communicate with the boys by their mother. Communication with them under such circumstances was difficult indeed. Significance is not a commodity to be measured in units. *Rosell v. Dausman*, (1978) Ind.App., 373 N.E.2d 185, 188.

As to physical visitation, the parties' Record on Agreed Statement says:

"(d) Different members of Mr. Thomas' family visited his sons in Bloomington, Indiana, specifically, Mr. Thomas' mother had visited them in April, 1979, and March, 1980."

Visitation by paternal family members, especially the paternal grandmother, constitutes indirect communication by the non-custodial natural father with his children who are in the custody of their natural mother, cf. a case with strikingly similar facts. *Adoption of Anonymous, supra*, 302 N.E.2d 507, 508–09.

■ The grandmother's personal visits with the boys constituted communication by Chris with his children, and were in and of themselves significant. That she traveled from her home in Louisiana which we judicially know is far distant from Bloomington, Indiana, makes them more so. Her April, 1979, and March, 1980, visits break the 21 month period from divorce to adoption hearing into 3 segments of 6, 11, and 4 months, respectively. The statutory requirement of failure to significantly communicate for a period of 1 year, vis-a-vis token visitation for the same period, has not

been satisfied for this reason alone, but there is more. Chris has paid substantial support for the boys continuously without any legal compulsion to do so.

■ We hold under the peculiar facts of this case that a natural, non-custodial father who

1. voluntarily and continuously pays substantial monetary support for his children to the person having custody of them,

2. has no legal obligation to do so either by law or judicial decree, and

3. has no legal rights of visitation with them is attempting to significantly communicate with such children under our statute.

Clearly, Chris was mired in a legal morass not of his making and was doing the best he could to communicate with the boys under the circumstances. The evidence and inferences in this case as resolved in appellee's favor lead to but one conclusion: Chris did and was continuously attempting to significantly communicate with his boys during this entire period. Thus, the trial court's decision was clearly erroneous.

The decision is reversed and the cause remanded to the trial court with instructions to enter final judgment for the appellant.

MILLER, P. J., concurs with separate opinion.

YOUNG, J., dissents with opinion.

MILLER, Presiding Judge, concurring.

I concur in the result. The pertinent evidence disclosed by the parties in their "Agreed Statement" of facts submitted pursuant to Ind. Rules of Procedure, Trial Rule 7.3 is as follows:

(1) Chris Delayne Thomas, respondent herein, was married to Charlotte Ann Thomas (Lee) in 1970 and was divorced from her on October 16, 1978, in Vernon Parish, Louisiana. Their marriage produced two children: Chris Delayne Thomas, Jr., born November 27, 1970, and Carl

---

"clear, cogent and indubitable evidence" the non-consenting, non-custodial parent was

guilty of either (a) or (b) that an adoption may be granted without such parent's consent.

David Thomas, born August 19, 1972. Charlotte Ann Thomas (Lee) was awarded custody of the children in the divorce decree; Chris Delayne Thomas was not awarded any specific rights of visitation.

(2) Thomas Henry Lee, petitioner herein, was married to Charlotte Ann Lee on October 22, 1978. Charlotte Ann Lee left Vernon Parish, Louisiana, in November, 1978, and moved with her husband and her two sons to Bloomington, Indiana. Chris Delayne Thomas has resided in Colorado and Louisiana since 1978.

(3) Thomas Henry Lee filed his Petition to Adopt Chris Delayne Thomas, Jr., and Carl David Thomas on May 8, 1980, in the Monroe Circuit Court, Nat U. Hill, Judge.

(4) Charlotte Ann Lee consented to the adoption of her two sons. Chris Delayne Thomas did not consent to the adoption.

(5) Lacking the consent of the natural father of Chris Delayne Thomas, Jr., and Carl David Thomas, the petitioner relied on the provisions of Indiana Code 31–3–1–6(g) in alleging that such consent was not required.

(6) In her report to the Court, which was admitted by stipulation of the parties, Suzanne Pauwels of the Monroe County Department of Public Welfare stated that "[t]here does not appear to be any reason that this adoption should not take place." Ms. Pauwels further stated that Mr. Thomas had not paid child support for six months. Mr. Thomas disputed those statements.

(7) The hearing of the Petition to Adopt was held on July 14, 1980, before Judge Hill. Both petitioner and respondent were present at the hearing and waived the taking of testimony. Testimony given at the hearing which is pertinent to the appeal of this case was:

(a) Mr. Thomas stated that he had paid support of $150.00 per month for his two sons since May, 1978, with only one interruption of at least two months which immediately preceded the filing of the Petition to Adopt. Mr. Thomas subsequently sent payments for arrears, which payments were received but not cashed by Mrs. Lee at the time of the hearing. The divorce decree did not require Mr. Thomas to pay child support.

(b) Mr. Thomas stated that he had talked with his sons by telephone in April and December of 1979, and in March, 1980. Mr. Thomas also stated that he had attempted to talk to the boys on many other occasions but was refused by Charlotte Ann Lee. Mrs. Lee disputed this statement, stating that Mr. Thomas had attempted to communicate with his sons no more than four times between January, 1978, and the date of the hearing in July of 1980.

(c) Mr. Thomas stated that on holidays and on his sons' birthdays, he sent greeting cards, money and other gifts to them in Bloomington, Indiana, which allegation Mrs. Lee disputed.

(d) Different members of Mr. Thomas' family visited his sons in Bloomington, Indiana, specifically, Mr. Thomas' mother had visited them in April, 1979, and March, 1980."

As revealed by the "Agreed Statement," Thomas Lee's adoption petition (as well as the trial court's ultimate judgment in his favor) relied upon the provisions of Ind. Code 31–3–1–6(g) in seeking to terminate the parental rights of Chris Thomas. That statute provides in relevant part that:

"(g) Consent to adoption is not required of:

(1) a parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; *or a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so* or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made

only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents); ...." (Emphasis added.)

Our Courts have held that where a petitioner seeks to terminate the rights of a child's natural parent, it is incumbent upon him to prove the material allegations of his petition by "clear, cogent and indubitable evidence." *Graham v. Starr*, (1981) Ind. App., 415 N.E.2d 772; *Matter of Lockmondy's Adoption*, (1976) 168 Ind.App. 563, 343 N.E.2d 793; *In re Adoption of Bryant*, (1963) 134 Ind.App. 480, 189 N.E.2d 593. As explained by Judge Hunter in *In re Adoption of Bryant, supra* at 492–93, 189 N.E.2d at 599–600 (in holding, *inter alia*, the mere lack of support payments does not necessarily constitute a "failure" of support within the meaning of the statute then in effect):

"The petitioner must be prepared to prove that the living parents of the child have so violated their natural and legal obligations to the child that they come within the terms of the statute authorizing waiver of consent of the natural parents. Thus the parties should not approach the court in equal status. Courts have not hesitated to build a 'strong fortress' around the rights of natural parents to their children; for this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established 'by clear and indubitable evidence.'" (Citations omitted.)

Applying these principles to the statute here at issue the petitioner, Lee, "not only had the burden of proving a lack of communication," but also that the natural father, Thomas, "was *able* to communicate," *In re Adoption of Anonymous*, (1973) 158 Ind. App. 238, 242, 302 N.E.2d 507, 510, whether this burden has been met is necessarily dependent upon the facts and circumstances of each particular case, including, for example, the custodial parent's willingness to permit visitation, *Adoption of Anonymous, supra*, as well as the natural parent's financial and physical means to accomplish his obligations. *See Burris v. State*, (1978) Ind. App., 382 N.E.2d 963.

In the case at bar, involving children living a considerable distance from their natural father, I cannot conclude the agreed facts submitted to this Court "indubitably" exhibit the father's *ability* and failure to achieve significant communication, as required by our statute. As noted above, the "Agreed Statement" recites that Thomas "has resided in Colorado and Louisiana since 1978" and that during that period the children were living with their mother in Bloomington, Indiana. Significantly, however, the statement is silent as to Thomas's financial or physical ability to visit with his children, although it is undisputed he telephoned on a number of occasions and that he made support payments, voluntary in nature. Without attempting to formulate any universal rule as to when a parent's communications may be deemed "significant" or merely "token," it is apparent, I believe, the facts adduced in the instant appeal provide an insufficient basis [1] for the

---

1. For example, although the agreed statement recites that Mrs. Lee testified Thomas "had attempted to communicate with his sons no more than four times between January 1978, and the date of the hearing in July of 1980," it does not disclose the precise nature of these attempts, when they were successful, or if they were not successful, why they were not. See *In re Adoption of Anonymous, supra* 158 Ind. App. at 242–43, 302 N.E.2d at 510, where this Court noted, in upholding a trial court's refusal to terminate parental rights, that "[i]n their testimony appellants have not denied that they made some attempts to block communication," and the record in that case revealed no evidence the appellants had thereafter "invited or encouraged communication." The Court concluded:

"If it be granted *arguendo* that the evidence is sufficient to sustain an inference that the mother could have succeeded in communicating with the children if she tried harder, that is certainly not the only inference reasonably to be drawn from the evidence."

*Id. See also In re Bryant's Adoption, supra* 134 Ind.App. at 492, 189 N.E.2d at 599 (parental rights may not be terminated "at will" by a custodial parent by the latter's refusal to accept tendered support payments.)

trial court, or this Court, to conclude Thomas had the requisite ability to significantly communicate with his children and then unjustifiably failed to do so. To assault the "strong fortress" of a parental relationship, the record must reveal "clear and indubitable evidence" the parent, without justifiable cause, has violated his "natural and legal obligations" to his children. *In re Adoption of Bryant, supra.* Such evidence is not present here. Petitioner Lee failed to meet his burden of proof.

I concur with Judge Conover that the judgment be reversed and the cause remanded to the trial court for entry of judgment in favor of Thomas.

YOUNG, Judge, dissenting.

I dissent.

Consent to adoption is not required of "(1) A parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents);"

I.C. 31–3–1–6(g)(1). The statute particularizes certain conditions under which the parental rights of a natural parent may be terminated by adoption without that parent's consent. The last phrase of the parenthetical insert to that subparagraph gives the trial court discretion to find abandonment when there is merely token efforts to support or to communicate. The significance of communication is not a commodity to be measured merely in terms of numbers of visits, but rather the quality thereof. The statutory language creates the authority for the trial court to find abandonment, even though there exists some minimal or token efforts of support or communication. The language in fact does not obligate the court to specifically state the reasons for abandonment.

Further, a general finding that the allegations of any petition for adoption are true is sufficient in the absence of any request for specific findings of fact and conclusions of law by one of the parties. *Horlock v. Oglesby,* (1967) 249 Ind. 251, 231 N.E.2d 810. It is not necessary for the trial court to recite its findings in detail or specificity so long as the ultimate findings are stated in the order of adoption. The record herein does not indicate any request by appellant for specific findings of fact or law and the Order of Adoption does in fact make certain findings of fact pertinent to the resolution of the adoption question. The Order of Adoption certainly is sufficient in light of the requirements in *Horlock, supra,* since appellant has failed to request the trial court to make special findings of fact and conclusions of law.

The decision of the trial court comes to the appellate court clothed with the presumption that a correct result was reached and the burden is upon the appellant to overcome that presumption. *In re Adoption of Anonymous,* (1973) 158 Ind. App. 238, 302 N.E.2d 507. The appellant may not overcome that burden by merely asking us to reweigh the evidence, which is not our function. The Record on Agreed Statement reflects a number of items of contested factual matters before the court, all of which were presented to the court at trial through the testimony of the natural father, the natural mother, and the adoptive father. The natural father talked with his sons by telephone in April and December of 1979, and in March of 1980. The facts regarding other attempts of communication were disputed. The father's mother's visits in April, 1979, and March, 1980, are irrelevant to this issue of abandonment. These facts are sufficient for the trial judge to conclude under the statute that the natural father had failed without "justifiable cause to communicate significantly" with

his children or had made only token efforts to communicate with the children and thus had abandoned them.

We will consider only the evidence most favorable to appellee together with any reasonable inferences which may be drawn therefrom to determine whether the decision is sustained by sufficient evidence within the standard of proof of clear, cogent and indubitable evidence. *Matter of Adoption of Lockmondy*, (1976) 168 Ind. App. 563, 343 N.E.2d 793. We should not set aside the trial court's judgment unless it appears to be clearly erroneous and should give due regard to the opportunity of the trial court to judge the credibility of witnesses as they sat before the trial court and testified. *Matter of Adoption of Lockmondy, supra.*

I would affirm the trial court.