Charol WILLIAMS, Appellant–Respondent,

v.

Gary TOWNSEND and Gail Townsend, Appellees–Petitioners.

No. 18A05–9305–CV–180.

Court of Appeals of Indiana, Fifth District.

Feb. 16, 1994.

Lon D. Bryan, Muncie, for appellant-respondent.

Michael J. Alexander, Muncie, for appellees-petitioners.

BARTEAU, Judge.

Charol Williams appeals the adoption of R.W. by Gary and Gail Townsend, arguing that the granting of the adoption without his consent was not supported by the evidence. We affirm.

## FACTS

Williams is serving a fifty year prison sentence for the November, 1989 murder of his wife—the mother of R.W. R.W. was four years old at the time of the murder and has resided since then with her maternal aunt and uncle, Gary and Gail Townsend. The Townsends brought the petition for adoption alleging that Williams had abandoned and deserted R.W. as of November, 1989. Williams contested the adoption, which was granted over his objection.

## DISCUSSION

Indiana Code 31–3–1–6(i) governs when consent to adoption is not required. It provides:

(i) Consent to adoption is not required from any of the following:

(1) A:

(A) parent or parents, if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or

(B) parent of a child in the custody of another person, if for a period of at least one (1) year the parent fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree. (When the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents.)

Williams contends that the trial court erred in granting the adoption without his consent because he sent R.W. cards and letters.

As a reviewing court, we will not disturb the trial court's decision in adoption proceedings unless the evidence at trial leads to but one conclusion, and the trial court reached an opposite conclusion. *In re Adoption of Marcum* (1982), Ind.App., 436 N.E.2d 102.

In its findings of fact, the court noted that Williams had not communicated

nor visited with the child since the time he was incarcerated, except by an occasional letter or card sent to his sister, and that he had made no substantial effort to communicate with the child in any other manner nor to visit with the child. The court also noted that Williams had taken no legal action to enable visitation or communication. The only evidence presented in Williams' favor as to his attempted communication was that he had one telephone conversation with the child shortly after November of 1989 and that he had written her letters through his sister. This evidence, even considering that Williams is incarcerated, is not of such a compelling nature that it mandates consideration as more than merely "token" communication. While the fact of Williams' incarceration alone cannot justify a finding of abandonment, *In re Adoption of Herman* (1980), Ind.App., 406 N.E.2d 277, it is obvious from the court's findings that Williams' incarceration was not the sole factor supporting the decision. In light of the specific statutory authority permitting the trial court to disregard token attempts at communication and the absence of any compelling evidence that Williams' attempts at communication were more than that, we cannot say, without engaging in a reweighing of the evidence, that the trial court erred.

The dissent contends that Williams' testimony that he sent "hundreds" of letters (actually he testified he sent "[a] hundred or so or more", R. 113), and the verification of his letter writing by his sister and mother, presents uncontroverted testimony that contradicts the trial court's finding that Williams only communicated by an "occasional" card or letter. The dissent ignores the fact that trial courts retain the prerogative to believe or disbelieve self serving testimony. Williams did not introduce into evidence any of the "hundred or so" letters he claimed to have written his daughter and the Townsend's had no way of disproving his claim of proficient letter writing, as all the letters were conveniently mailed to Williams' sister's address. Further, Williams' relatives' credibility is not above reproach. Williams' sister had maintained contact with R.W. and was faced with the imminent extinguishment of her legal right to do so should the Town-

send's adoption petition be granted. Williams' testimony itself raised a question as to whether he was fighting for *his* right to be R.W.'s parent or his sister's desire to assume the role. When asked how he proposed to be a father to this child while he was in prison, Williams testified: "Well, I was wanting my sister to have my daughter." R. 118. Later, when asked a similar question, he responded "I was wanting my sister to do it for me." R. 119. The trial court, as the ultimate finder of fact, was free to assign nominal weight to the claims of both Williams and his family.

Further, the unique facts of this case weigh heavily in favor of permitting R.W. to be adopted. Williams is incarcerated because he killed R.W.'s mother. In so doing, he condemned four-year-old R.W. to a childhood spent without the daily care and nurturing of either of her natural parents. To allow Williams, by merely sending an occasional card or letter, to prevent R.W. from ever completely developing such a parental relationship with others is unjustifiable. We believe that commission of an intentional act by a parent, which not only results in that parent's incarceration for the duration of the child's minority but which also deprives the child completely of the love, affection and care of the other parent, is sufficient to constitute abandonment of the child, negating the need for parental consent to adoption.

The trial judge did not rely on these peculiar circumstances to justify the finding of abandonment—and rightfully so—because the statute permitting adoption without consent of the parent does not contemplate consideration of the circumstances leading to the child's abandonment. We consider this an oversight on the part of the legislature. Situations such as this and ones where a parent is incarcerated for harming the child merit inclusion in the exceptions to the consent requirement.

We affirm the decision of the trial court because there is sufficient evidence to support the trial court's conclusion that Williams failed to communicate significantly with R.W. for more than one year. To do otherwise

would constitute an impermissible reweighing of the evidence.

AFFIRMED.

HOFFMAN, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I respectfully dissent. A petitioner seeking adoption without consent of the natural parent bears the formidable burden of proving the statutory criteria set forth in Ind. Code § 31–3–1–6(i)(1) by clear, cogent and indubitable evidence. *In re Leckrone* (1980), Ind.App., 413 N.E.2d 977. Indubitable means "not open to question or doubt: too evident to be doubted: unquestionable." *In re Adoption of Thomas* (1982), Ind.App., 431 N.E.2d 506, 514, *trans. denied.* In this case the Townsends have not carried their burden and therefore the trial court's judgment should be reversed.

Of the three distinct situations under which consent to adopt is not required of a natural parent, two are relevant here, namely: the natural parent either abandoned the child or the natural parent failed to significantly communicate with the child. In support of its determination that Williams abandoned his minor daughter, the trial court found:

> [T]he act of the Respondent of the killing of the mother of this child, the resulting trauma to the child, the resulting disabilities of the child, the efforts of these adoptive parents to obtain care, counseling, and to repair as much as it can be done, the loss that this child has sustained and the failure of this father to maintain significant communication with the child, should constitute abandonment and desertion of the child by this father.

*Record* at 217. "Abandonment," as the term is used in the adoption statute, refers to conduct on the part of the parent which shows a "settled purpose to forego all parental duties and relinquish all parental claims to the child." *Murphy v. Vanderver* (1976), 169 Ind.App. 528, 529, 349 N.E.2d 202, 203.

There is no question that Debra's murder at the hands of Williams was tragic and reprehensible. However, I am not willing, as is the majority, to conclude that Williams' conduct represents abandonment as a matter of law. Rather, the test is whether Williams showed a "settled purpose" to forego all parental duties and relinquish all parental claims to his daughter. *See Murphy*, 169 Ind.App. at 529, 349 N.E.2d at 203. The law is clear that imprisonment, standing alone, does not establish abandonment or desertion so as to allow an adoption without the parent's consent. *In re Adoption of Herman* (1980), Ind.App., 406 N.E.2d 277. Hence, additional factors must be present in order to demonstrate abandonment.

There is little doubt that the consequences of Williams' conduct will make it more difficult for him to fulfill his parental duties or to exercise any parental claim. He will be incarcerated until the year 2015. However, it is conduct which shows a settled or intended purpose to affect these ends rather than consequences of the conduct that results in abandonment. Apparently, the majority recognizes this distinction but summarily dismisses it by speculating that the legislature was guilty of "oversight" in failing to include a consent exception in the adoption statute that would cover the facts of this case. *See* Op. at 254. I disagree. Ind.Code § 31–3–1–6(i)(1) is fully adequate to address the facts of this case. However, the facts here do not support the conclusion that abandonment has occurred. As this court observed in *In re Adoption of Thomas*: "Courts have not hesitated to build a strong fortress around the rights of natural parents to their children. For this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established 'by clear, cogent and indubitable evidence.'" 431 N.E.2d at 513 quoting *Graham v. Starr* (1981), Ind. App., 415 N.E.2d 772, 774. On the question of abandonment that proof is absent here.

Further, there is no question that the Townsends' efforts on R.W.'s behalf are laudable and should be commended. Nonetheless, their efforts do not address the issue of abandonment. Rather, those efforts demonstrate a loving and caring couple whose adop-

tion of R.W. very well may be in the child's best interest. However the law is well settled that in an adoption proceeding where parental consent has not been obtained, the court cannot consider whether the adoption is in the child's best interest until the petitioner has proven at least one of the statutory grounds for dispensing with consent. *In re Adoption of Augustyniak* (1987), Ind.App., 505 N.E.2d 868, *reh'g denied,* 508 N.E.2d 1307, *trans. denied.* Therefore, in this case, either abandonment or failure to significantly communicate must be first established before the best interest rule can be applied. Abandonment has not been shown.

In like fashion, the record before us does not demonstrate that the Townsends proved by clear, cogent and indubitable evidence that Williams failed to significantly communicate with R.W. There is no talismanic test which can be applied to distinguish between communication which is "significant" and that which is merely "token" under I.C. § 31–3–1–6(i). Insignificant communication with a free parent may be significant in relation to an incarcerated parent with limited access to his child. *Lewis v. Roberts* (1986), Ind.App., 495 N.E.2d 810, 813.

Here, the majority apparently has taken the position that letters Williams wrote his daughter amounted to merely token communication. This position is supported by the trial court's findings of fact which dictate in part, "Court further finds that the respondent has not communicated nor visited with the child since the time he was incarcerated ... except by occasional letter or card sent to his sister." *Record* at 213. The problem, however, is that the trial court's findings are not consistent with the evidence. I certainly recognize that upon review of the trial court's decision in an adoption proceeding this court does not reweigh evidence or judge witness credibility, but instead we examine the evidence most favorable to the trial court's decision. *Adoption of Herman,* 406 N.E.2d at 278. On the other hand, the trial court may not disregard evidence and we may reverse the trial court's decision where the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *In re*

*Adoption of Hewitt* (1979), Ind.App., 396 N.E.2d 938.

In this case Williams testified that he had written hundreds of letters to his daughter and forwarded the letters to his sister, Barbara Ledsinger for delivery to the child. He also testified that on various occasions R.W. would send letters, cards and drawings to him by way of his sister. Barbara Ledsinger testified and confirmed Williams' testimony as did Williams' mother. There was no evidentiary dispute concerning the number of letters Williams sent his daughter. The testimony in this regard was introduced into evidence without objection and was never refuted. Clearly Williams' communication with R.W. amounted to more than an "occasional letter or card" and cannot be accurately characterized as token.

Also, during this period of Williams' incarceration, R.W. has been in the Townsend's custody. The record shows that Ledsinger and other family members have visited R.W. at the Townsends' home on a regular basis. This fact is significant because visitation by a family member has been recognized as indirect communication by the non-custodial natural father when his child is in the custody of a third party. *See In re Adoption of Thomas* (1982), Ind.App., 431 N.E.2d 506, *trans. denied; In re Adoption of Anonymous* (1973), 158 Ind.App. 238, 302 N.E.2d 507. In sum, the evidence in this case shows that Williams either engaged or attempted to engage in significant communication with his minor daughter. There is no clear, cogent and indubitable evidence to the contrary.

The standard of proof required of a petitioner in an adoption proceeding is formidable. In this case the Townsends have not met that standard. In my view the evidence of record compels a conclusion opposite that reached by the trial court. Therefore, I would reverse the judgment.