## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 17 2018, 9:17 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan P. Dillon
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEY FOR APPELLEE

Shannon L. Robinson
Shannon Robinson Law
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Adoption of B.A.B.N. and K.E.J.N.

B.N.,

*Appellant-Respondent,*

v.

Q.S.,

*Appellee-Petitioner*

October 17, 2018

Court of Appeals Case No. 18A-AD-978

Appeal from the Johnson Superior Court

The Honorable Kevin M. Barton, Judge

Trial Court Cause Nos. 41D01-1612-AD-62, -63

**Crone, Judge.**

## Case Summary

[1] B.N. ("Father") appeals the adoption decree terminating his parental rights to B.A.B.N. and K.E.J.N. ("the Children") and granting the adoption petition filed by Q.S. ("Stepfather"). Father argues that the trial court erred in finding that his consent for adoption was not required. Finding no error, we affirm.

## Facts and Procedural History

[2] The following facts are undisputed. In 2008, the Children were born out of wedlock to Father and K.S. ("Mother"). Prior to May 2014, Father had primary physical custody of the Children. On May 5, 2014, the Monroe Circuit Court granted Mother's petition for modification of custody, awarded her primary physical custody and sole legal custody of the Children, and granted Father supervised parenting time. On June 29, 2014, Mother filed a motion to modify Father's parenting time. Father failed to appear at the hearing on Mother's motion. The Monroe Circuit Court issued an order modifying Father's parenting time such that it would be at Mother's sole discretion and be supervised by the Children's paternal grandparents. On August 13, 2014, Mother filed a petition for an ex parte order for protection in the Monroe Circuit Court. The Monroe Circuit Court issued an ex parte order for protection for a period of two years, which was renewed in 2016 for an additional two years through August 9, 2018. In the protection order, Father was enjoined was contacting or directly or indirectly communicating with Mother, was prohibited from entering Mother's residence, and was ordered to stay away from her residence. The Children were not listed as family members

subject to the protection order, and the protection order did not prohibit Father from contacting the Children directly or indirectly.

[3] Starting in May of 2014, Father was incarcerated for a significant period. From the first part of November 2014 to March 13, 2015, he was incarcerated in the Morgan County Jail. Father then lived with the Children's paternal grandfather ("Grandfather") until Father was again incarcerated on May 14, 2015.[1] From May 14, 2016, to December 8, 2016, Father was incarcerated in the Monroe County Jail, and then transported to the Morgan County Jail where he remained until May 2, 2017.

[4] During 2015 when Father lived with Grandfather, Father had visitation with the Children when they were at Grandfather's residence. The Children were at Grandfather's home with Mother's permission, but she was unaware of the visitation. Other than that period of visitation, Father had no contact with the Children after his incarceration in November 2014.

[5] On December 12, 2016, Stepfather filed a verified petition for adoption. Father filed an objection, and on August 2, 2017, the trial court held a hearing on whether Father's consent was required. On October 3, 2017, the trial court entered its order on Father's consent ("October 2017 Order"), in which it concluded that between May 14, 2015, and December 12, 2016, Father failed without justifiable cause to communicate significantly with the Children when

---

[1] The appealed order does not state when Father was released from this incarceration or where he resided after his release.

able to do so, and therefore his consent was not required under Indiana Code Section 31-19-9-8(a)(2(A). In reaching this conclusion, the trial court made the following relevant findings:

> 19. During the period of May 14, 2015 through December 12, 2016, Father was continuously incarcerated. Indiana has recognized that the fact of imprisonment by itself does not operate automatically to satisfy the waiver provisions of Indiana Code 31-19-9-8 and it does not foreclose the possibility of such a finding. The fact of imprisonment is a circumstance to be taken into account in the ability of a parent to communicate significantly so that what may be insignificant for a free person may be significant for an incarcerated person.

> 20. The fact of imprisonment precluded visitation. The fact that visitation did not occur cannot be held against Father.

> 21. No evidence was submitted that Father could have made any telephone calls to the children. Realistically, any telephone calls would have to be placed to Mother. Mother testified that she obtained the Ex Parte Order For Protection to prevent Father from contacting her. Shortly thereafter, Mother changed her telephone number. The fact that Father placed no telephone calls to the [C]hildren cannot be held against Father.

> 22. The only means that Father had to communicate with the [C]hildren during his incarceration was by written letter. This Father did not do. Father had no communication with the [C]hildren. Nothing prevented Father from writing the [C]hildren letters. Father is accorded the right under Section I(A)(4) of the Indiana Parenting Time Guidelines. The [C]hildren were not protected persons subject to the Ex Parte Order For Protection entered in favor of Mother. Written communication would not have been prohibited.

Appellant's App. Vol. 2 at 60-61.

[6]     On February 28, 2018, the trial court held a hearing on the best interest of the Children, at which Father was permitted to testify regarding his efforts to communicate with the Children between May 14, 2015, and December 12, 2016. On March 15, 2018, the trial court issued the adoption decree, in which it found in relevant part as follows:

> 3. At hearing on February 28, 2018, [Father] was permitted to testify that he sent letters to [Grandfather] for [him] to give to the [Children]. However, [Grandfather] testified that he did not give the letters to the [Children] for fear of antagonizing [Mother] and adversely effecting his opportunity for visitation with the [Children]. [Grandfather] testified that he had possession of the letters.

> 4. Inasmuch as the Court's [October 2017 Order] was based upon the absence of communication by [Father], the Court directed that the letters be provided to the court. Upon the letters being provided to the court, the court stated that it would distribute the letters to counsel and determine if objection were to be made to the receipt of the letters into evidence.

> 5. [Grandfather] delivered two letters to the court. However, the letters were not authored by [Father]. The letters were in the nature of ex parte communication with the court from non-witnesses. The court does not receive the letters.

> 6. In addition, the court received from [Grandfather] an audio book that had been recorded by [Father] for the [Children]. The book was not within the terms of the court's directive. [Father] testified that the book was recorded while he was incarcerated,

however, the date of the recording and the date of delivery of the book were not established.

7. The Court does not reconsider [its October 2017 Order].

Appealed Order at 1-2. The trial court found that adoption was in the Children's best interest, terminated Father's parental rights, and granted Stepfather's petition for adoption. This appeal ensued.

## Discussion and Decision

[7] Father argues that "[u]nder the facts and circumstances of this case, specifically his incarceration, Mother's protection order, and Grandfather's failure/decling to relay Father's letters and audio book, he had justifiable cause for his failure to communicate significantly with [the Children]." Appellant's Br. at 7. When reviewing an adoption order, "we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.* Where, as here, the trial court has made findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). Factual findings are clearly erroneous where the record lacks any evidence or reasonable inferences to

support them, and a judgment is clearly erroneous where it is unsupported by the findings and the conclusions based on those findings. *Id*.

[8] In an adoption proceeding, the petitioner must prove by clear and convincing evidence that a noncustodial parent's consent is not required for the adoption. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014).

> In reviewing a judgment requiring proof by clear and convincing evidence, we may not impose our view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. Further, we may not reweigh evidence or assess witness credibility.

*Id*. (citations omitted).

[9] In finding that Father's consent was not required, the trial court applied Indiana Code Section 31-19-9-8(a)(2)(A), which provides in relevant part that a noncustodial parent's consent to adoption is not required where the child has been in the custody of another person for at least one year and the parent "fails without justifiable cause to communicate significantly with the child when able to do so."

The test for communication is not whether the noncustodial parent had no communication with the child, but whether he failed without justifiable cause to have significant communication when able to do so. *In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). "[T]he purpose of this statutory

provision is to foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child." *Id*. (citation and quotation marks omitted).

[10] From March of 2015 until the petition was filed in December 2016, a period of one year and nine months, Father had no communication with the Children. While Father asserts that his incarceration and the protection order should be considered when determining whether his lack of communication was justified, he ignores that the trial court specifically found that his imprisonment prevented visitation and therefore his lack of visitation would not be held against him. The trial court also specifically found that the protection order and the fact that Mother changed her telephone number prevented Father from phoning the Children, and therefore his failure to call the Children would not be held against him.

[11] That leaves the letters and audiobook that Father allegedly created while incarcerated and allegedly delivered to Grandfather to give to the Children. In its October 2017 Order, the trial court found that Father could have written letters but had not, and therefore his lack of communication was unjustifiable. At the best interest hearing, Father and Grandfather testified that Father wrote letters and recorded an audiobook, but Grandfather failed to give them to the Children. Grandfather testified that he had the letters. Further, Father argues that Mother acknowledged that she received one letter from him but refused to let the Children see it. Tr. at 171.

[12]  Father ignores that the trial court directed that the letters be provided to it, but none were submitted. Although an audio book read by Father was submitted, the date of the recording and the date of the delivery of the book were not established. Father's argument is merely an invitation to reweigh the evidence and judge witness credibility which we will not do. *Adoption of M.S.*, 10 N.E.3d at 1279. In *Williams v. Townsend*, 629 N.E.2d 252 (Ind. Ct. App. 1994), another panel of this Court affirmed the trial court's finding that Williams failed to communicate significantly with his child for more than one year, noting that Williams offered no evidence of any of the hundred or so letters that he claimed to have written and that "trial courts retain the prerogative to believe or disbelieve self[-]serving testimony." *Id.* at 254. We cannot say that the evidence leads to but one conclusion and the trial court reached the opposite conclusion. As such, we conclude that the trial court did not err in concluding that Father failed to communicate with the Children without justifiable cause for a period of one year, and therefore his consent to the adoption was not required. Therefore, we affirm the adoption decree.

[13]  Affirmed.

Najam, J., and Pyle, J., concur.